**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DISTRICT OF COLUMBIA INTERNATIONAL PUBLIC CHARTER SCHOOL**, | |
| *Plaintiff,* | |
| **v.** | **Case No. 1:21-cv-0223-RCL** |
| **ANA LEMUS**, | |
| *Defendant.* | |

**MEMORANDUM OPINION**

The Office of the State Superintendent of Education issued an order that plaintiff District of Columbia International Public Charter School ("DCI") provide certain education accommodations to defendant Ana Lemus's son, O.C.L.  Pl.'s Mot. 1, ECF No. 13. Now, DCI moves to stay that order. *Id.*  After this Court denied her motion to dismiss, defendant Ana Lemus responded, Def.'s Resp., ECF No. 22, and DCI replied, Pl.'s Reply, ECF No. 23. Upon consideration of the parties' filings, applicable law, and the record herein, the Court will **DENY** DCI's motion for a stay.

**I.   BACKGROUND**

This Court laid out the facts relevant to this motion in a recent memorandum opinion. *See District of Columbia Int'l Charter Sch.*, No 21-cv-223 (RCL), 2022 WL 407151 (D.D.C. Feb. 10, 2022), ECF No. 23. Ana Lemus is the mother of O.C.L., an intellectually disabled student who started attending DCI in sixth grade. Compl. ¶ 5, ECF No. 1. On July 30, 2020, Lemus filed a due process complaint pursuant to the Individuals With Disabilities Education Act ("IDEA") with the Office of the State Superintendent of Education ("OSSE") for the District of Columbia. *Id.* ¶ 47. She challenged Individual Education Programs ("IEPs") dating back to the 2017–18 school year

1

and alleged that DCI denied her son a free adequate public education ("FAPE"). *Id.* An IEP is a personalized plan that ensures that children with disabilities receive sufficient support services. *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005). When a student with a disability is identified, an IEP Team, a multidisciplinary team that includes the child's teachers and parents, creates an IEP to provide individualized support to the student. *Id.*

DCI first moved to dismiss, arguing that Lemus's allegations were time-barred. Compl. ¶¶ 52–53. Complaints under the IDEA must be raised within "[two] years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint," subject to two specific exceptions that Lemus did not assert. 20 U.S.C. § 1415(f)(3)(c); Compl. ¶ 49. The OSSE Hearing Officer found that the IEP amendment forms that supposedly put Lemus on notice about alterations to O.C.L.'s IEP were not in Spanish, her native language. *Id.* ¶ 54. Accordingly, the officer held that the statute of limitations had not run out. *Id.* ¶ 54.

At the OSSE due process hearings in October 2020, DCI presented multiple witnesses. *Id.* ¶ 56.  All these witnesses worked at DCI and had "actual experience educating the student." *Id.* These witnesses were certified as experts. *Id.* Lemus presented one expert witness in response: Dr. Jay Lucker, a professor at Howard University and a Director of Howard's Five-Year Accelerated Master's Degree Program in Speech-Language Pathology. ECF No. 13-7 at 5.  The Hearing Officer certified Dr. Lucker as an expert in communications disorders and limited his testimony to "the issue of English language services." *Id*. at 4.

On October 26, 2020, OSSE's Office of Dispute Resolution issued a Hearing Officer Determination and Administrative Order ("HOD"), in which it found that DCI denied O.C.L. FAPE with respect to IEPs dating back to sixth grade. Compl. ¶ 60. The HOD awarded three specific remedies:

(1) [DCI] shall fund a total of 100 hours of independent tutoring services for [O.C.L.] in Reading, Mathematics, and Written Expression, with no restrictions as to the time of day or deadlines for the completion of such services.

(2) [DCI] shall fund an independent evaluation to determine (1) how much academic growth could be reasonably be expected of Student with an appropriate IEP (i.e., 19 hours/week of specialized instruction outside general education) since December 4, 2017, and (2) what kind and amount of services would put [O.C.L.] in the academic position s/he would have been in had [DCI] provided him/her 19 hours/week of specialized instruction outside general education from December 5, 2017 until February 6, 2020.

(3) Within thirty (30) days of receipt of the independent evaluation, [DCI] shall convene a Multidisciplinary Team meeting to review the evaluation and to determine an appropriate amount of compensatory education services for the lack of an appropriate amount of specialized instruction outside of general education for [O.C.L.] for the period December 5, 2017 to February 6, 2020.

Hr'g Officer Determination 31, ECF No. 13-2.

DCI appealed the HOD and filed a motion to stay the HOD during this appeal. Pl.'s Mot. The complaint alleged that the Hearing Officer made several errors in his conclusion that DCI denied O.C.L. FAPE. Compl. ¶ 64–85. As particularly emphasized in its motion to stay, DCI alleges that the Hearing Officer: (1) improperly delegated determination of the amount of compensatory education, (2) "ignored the testimony of multiple expert witnesses"; (3) "erred in summarily shifting the burden of proof" to DCI; and (4) improperly relied on certain testimony. Pl.'s Mot. at 4–6. DCI also continued to allege that the statute of limitations barred Lemus's action. *Id.* DCI's motion is now ripe.

## II.   LEGAL STANDARDS

Courts considering whether to stay an administrative order apply the traditional stay factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance

of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Other courts in this district apply these traditional factors when determining whether to dismiss a HOD pending appeal. *See, e.g.*, *District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 89 (D.D.C. 2012).

When considering whether to stay a HOD, historically courts in this district evaluated the *Nken* factors on a "sliding scale"—a strong showing toward one or two factors could warrant a stay. *Id.* (citing *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009)). But since the Supreme Court's decision in *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7 (2008), the "sliding scale" standard has been called into question and a more stringent standard may apply to stay decisions. *Mallinckrodt Ard LLC v. Verma*, No. 19-cv-1471 (TFH), 2020 WL 7265325, at *5 (D.D.C. May 29, 2020) ("The D.C. Circuit has not yet decided, however, whether *Winter* requires that the sliding scale approach be 'abandoned.'"). This Court need not decide the fate of the sliding scale approach today, however, because the Court will decline to stay the HOD even applying the more lenient standard.[1]

### III.   ANALYSIS

Applying the traditional stay factors here, the Court finds that a stay is not warranted. DCI argues that it is likely to succeed on the merits of its appeal based on a number of theories. Pl.'s Mot. 4. While the Court is not convinced DCI will succeed on all of its theories, it does agree that

---

[1] The Court agrees with DCI that IDEA's "stay-put" standard is not relevant here, Pl.'s Reply 2, despite Lemus's reference to it, Def.'s Resp. 3. Under IDEA, during the pendency of any proceedings appealing a HOD, the student in question must remain in the "then-current educational placement" of the child. 20 U.S.C. § 1415(j). A child's educational placement "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Vinyard*, 901 F. Supp. 2d at 85 (quotation marks omitted). Because only compensatory educational awards for "past deficiencies," *Boose v. District of Columbia*, 410 F.3d 516, 522–23 (D.C. Cir. 2005), not O.C.L.'s educational placement or IEP, are in question here, the "stay-put" provision does not apply to this action.

DCI is likely to succeed on its argument that the Hearing Officer erred by delegating to the IEP team—which includes DCI staff members—responsibility to determine appropriate compensatory education services.  *Id.*  And while an irrevocable payment is undoubtably an irreparable injury, the Court does not agree with DCI that the injury to the defendant and her son is minimal. Staying the HOD and necessary compensatory services would likely harm O.C.L. Accordingly, this Court will **DENY** the DCI's motion to stay the HOD.[2]

## A. DCI Is Likely To Succeed On The Merits On One Of Its Arguments, But Not Likely To Succeed On The Merits Of Its Other Arguments

DCI raised multiple issues with the HOD. While the Court is not convinced by many of DCI's arguments, it agrees that DCI is likely to succeed on the merits of its claim regarding the Hearing Officer's "[m]ost obvious" error: delegating to an IEP team responsibility for determining the amount and type of additional compensatory education services. *Id.* This command directly violates the Circuit's instruction in *Reid v. District of Columbia*. 401 F.3d 516 (D.C. Cir. 2005).

The HOD mandated (1) that DCI fund 100 hours of tutoring, (2) that DCI fund an independent educational evaluation, and (3) that "[w]ithin thirty (30) days of receipt of the independent evaluation, [DCI] shall convene a Multidisciplinary Team meeting to review the evaluation and to determine an appropriate amount of compensatory education services for the lack of an appropriate amount of specialized instruction outside of general education." Hr'g Officer Determination 31. It is the third command that is relevant here. The D.C. Circuit has held that a Hearing Officer "may not delegate his authority to a group that includes an individual specifically barred from performing [his] functions." *Reid*, 401 F.3d at 526. Because IDEA due

---

[2] DCI argues that Lemus failed to respond to its arguments and those arguments must be treated as conceded. Pl.'s Reply 1–2. When a party fails to specifically respond to certain arguments, a court "may"—but need not—treat those arguments as conceded. *Campaign Legal Ctr. v. Fed. Election Comm'n*, 520 F. Supp. 3d 38, 50 (D.D.C. 2021). Given the stay relief requested here, the Court will not treat DCI's arguments as conceded.

process hearings "may not be conducted by an employee of the State educational agency or the local educational agency involved in the education or care of the child," 20 U.S.C. § 1415(f)(3), O.C.L.'s Multidisciplinary IEP Team, which is partially made up of DCI employees, *cannot* exercise the Hearing Officer's power to determine appropriate compensatory education awards. But that appears to be what the Hearing Officer asked the team to do here. Accordingly, the Court finds that DCI is likely to succeed on its claim that the Hearing Officer improperly delegated his authority.

DCI also argued that the Hearing Officer improperly discounted DCI's experts, erroneously concluded that Lemus proffered a *prima facie* case, disregarded the appropriate statute of limitations, and improperly relied on Dr. Jay Lucker. Pl.'s Mot. 4–6. After reviewing the HOD, the Court does not find these arguments persuasive. To start, DCI argues that the Hearing Officer "ignored" the testimony of multiple expert DCI witnesses who testified that the IEPs were appropriate. *Id.* at 5. But such witnesses are mentioned in the HOD. Hr'g Officer Determination 6. And while a *court* is instructed to give deference to the expertise of school authorities, *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017), there is no similar mandate to a Hearing Officer for a state educational entity—especially when that Hearing Officer is weighing conflicting testimony. The Hearing Officer was not required to defer to these experts.

DCI next argues that the Hearing Officer summarily "shifted the burden of proof to" DCI without requiring Lemus to present a *prima facie* case that the IEPs were inappropriate. Pl.'s Mot 5. It argues that "given the evidence before the Hearing Officer, there is a strong likelihood that this Court will determine he improperly shifted the burden of proof." *Id.* But DCI's motion does not convince the Court that Lemus's evidence was insufficient to present a *prima facie* case. The HOD indicates that the Hearing Officer relied on the fact that DCI reduced O.C.L.'s intensive

education services by "over 70% and . . . failed adequately to inform [Lemus] of the nature and significance of the reductions" in his determination that Lemus presented a *prima facie* case. Presenting a *prima facie* case is not a heavy burden—all that is required is that plaintiff provided "enough evidence" to justify sending a case to a jury. *W.S. v. District of Columbia*, 502 F. Supp. 3d 102, 120 (D.D.C. 2020). While the Court does not currently have the entire record or Lemus's evidence, it disagrees that there is "strong likelihood" that it will determine the Hearing Officer improperly shifted the burden.

Nor does the Court find that DCI is likely to succeed on its statute of limitations argument. The Hearing Officer found that the statute of limitations had not run out on Lemus's challenges to changes in O.C.L.'s IEP. Hr'g Officer Determination 24–25. He concluded that Lemus did not have notice of any changes because the IEP Amendment Forms, which purportedly put her on notice, were not in Spanish and were "confusing even to someone who is perfectly literate in English." *Id.* DCI argues that there was evidence it provided "oral translation" of the IEP Amendment Forms that would have put Lemus on notice. Pl.'s Mot. 7. But the Hearing Officer determined that the IEP Amendment Forms were misleading even in English, so DCI's argument that there was an oral Spanish translation of a misleading form does not convince the Court they are likely to succeed on this argument.

Finally, the Court does not agree that DCI is likely to succeed on its argument that the Hearing Officer erred when relying on Dr. Lucker, a professor at the Cathy Hughes School of Communications at Howard University, as an expert. Pl.'s Mot 6. DCI contested Dr. Lucker's expertise in English as a second language ("ESL") services. ECF No. 13-7 at 4. But his resume indicates he has studied communications issues in Spanish-speaking children, *id.* at 9, and communications testing for bilingual students, *id.* at 10, and has worked with doctoral students to

study processing skills in bilingual students, *id*. at 30. Reviewing the current record, this Court disagrees that DCI is likely to succeed in its argument that the Hearing Officer erred when crediting Dr. Lucker's ESL testimony.

Ultimately, while DCI will likely prevail on its theory that the Hearing Officer improperly delegated to the Multidisciplinary Team, the Court does not agree that DCI is likely to prevail on the merits of any of its other theories presented. Notably, even if DCI prevails on its improper delegation argument, that would not mean that the Hearing Officer erred in determining that DCI denied O.C.L. FAPE. That victory would mean the Hearing Officer erred in the award of certain remedies.

### B. DCI Will Suffer Irreparable Injury Without A Stay

DCI will suffer irreparable injury if a stay is not granted and it later prevails. Costs that schools pay for compensatory education pursuant to HODs are nonrecoverable. "As the D.C. Circuit has noted, '[i]t would be absurd to imagine a trial court ordering parents to reimburse a school system for the costs of a hearing examiner's erroneous placement of their child[.]'" *District of Columbia v. Masucci*, 13 F. Supp. 3d 33, 41 (D.D.C. 2014) (quoting *Jenkins v. Squillacote*, 935 F.2d 303, 307 n.3 (D.C. Cir. 1991)) (alterations in original). Nonrecoverable costs like the ones at issue here, for 100 hours of tutoring services or an independent educational evaluation, constitute irreparable economic injury. *Masucci*, 13 F. Supp. 3d at 41.

Courts in this district also recognize that a stay is appropriate to "preserve the [educational entity's] right to appeal what it considers to be an erroneous decision." *Id*. Without a stay, DCI argues that its appeal may become moot because the compensatory education costs are nonrecoverable and forced compliance will moot its challenges to other awards. Pl.'s Mot 8; *see District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 90 (D.D.C. 2012) ("[T]he Court finds

compelling the [educational entity's] arguments that a stay of these holdings is necessary to preserve the [educational entity's] meaningful right to appeal the HOD."). Here, however, the Court finds the threat of mootness modest as compared to other IDEA appeals. DCI's claim that the Hearing Officer improperly delegating his authority to the Multidisciplinary Team would not become moot, even if that team granted an educational award. Any compensatory award decided on by the team would likely be in violation of IDEA, *see supra* Part III.A.

In other words, the Court finds that DCI is likely to succeed on one of its theories of error— the improper delegation. But the Court does not find that DCI will be irreparably harmed if the Court fails to stay the section of the HOD implicated by that theory, because the improper delegation involves no nonrecoverable costs and will not become moot. On the other hand, the Court *does* find that DCI will be irreparably harmed if it is required to fund 100 hours of tutoring and an educational evaluation and ultimately succeeds on the merits. But the Court does not agree that DCI is likely to prevail on any of its theories challenging those compensatory damage awards or the Hearing Officer's overall determination that DCI denied O.C.L. FAPE.

### C. The First Two Factors Are Outweighed By The Irreparable Injury O.C.L. Faces If The HOD Is Stayed

The Hearing Officer determined that DCI denied O.C.L. FAPE for multiple years. Hr'g Officer Determination 27–29. By April 2019, O.C.L. "had made no objective academic progress since her/his enrollment" at DCI in 2017. *Id*. at 29. In fact, many of O.C.L.'s test scores decreased over the course of his time at DCI. *Id*. Given this extremely detrimental effect on his education, the Court firmly rejects DCI's argument that O.C.L. will suffer "no appreciable injury" if the Court "temporarily preserves the status quo." Pl.'s Mot at 9. O.C.L. is in dire need of compensatory educational services.

DCI argues that the "only potential injury is that Ms. Lemus might have to pay for the initial cost for the tutoring and independent evaluation, as opposed to immediately receiving these services at public expense." *Id.* But there is no indication that Lemus has the resources to personally pay for 100 hours of tutoring or an expensive independent evaluation of O.C.L.'s needs. So DCI's promise of "complete reimbursement" if the Court upholds the HOD is a weak one, given that there is no evidence she could procure these services to begin with. *Id.* DCI argues that, like in *Vinyard* and *Masucci*, "mere financial postponement does not constitute irreparable injury." *Id*. But *Vinyard* and *Masucci* both involved a delay of reimbursement for costs that had already been paid by the parents, not a school delaying payment for assigned compensatory education. *See Vinyard*, 901 F. Supp. 2d at 82 ("[In June 2021, [t]he hearing officer ordered DCPS to reimburse [d]efendants for all costs associated with G.V.'s education at the Lab School for the 2011–2012 school year."); *Masucci*, 13 F. Supp. 3d at 41 (staying the request for reimbursement to Ivymount, a private school). And in *Masucci*, the Court only stayed an order for reimbursement to a private school because it found that the HOD indicated the student's IEP could be properly implemented at both a private school and his previous public school. *Masucci*, 13 F. Supp. 3d at 41. There is no similar showing on the record here. The Hearing Officer ordered DCI to "fund" 100 hours of independent tutoring and an independent educational evaluation, not reimburse Lemus for them. Hr'g Officer Determination 31.

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433–34. As DCI acknowledges, a stay is inappropriate if the first two factors "are outweighed by the irreparable injury" to the child. Pl.'s Mot. 9 (quoting *Masucci*, 13 F. Supp. 3d at 41). The HOD indicates that O.C.L.'s education greatly suffered at

DCI. This Court will not exacerbate O.C.L.'s suffering by staying the HOD and ordering his mother to pay out of her own pocket for the educational services he needs.

### D. The Public Interest Here Is Neutral

There is certainly a public interest in minimizing government spending, which may support a stay here. *Masucci*, 13 F. Supp. 3d at 41 (quoting *Washington v. District of Columbia*, 530 F. Supp. 2d 163, 173 (D.D.C. 2008)). But there is also a public interest in ensuring that HODs are implemented in a timely fashion. *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 82 (D.D.C. 2003). This factor is accordingly neutral.

The Court finds that the four *Nken* factors, even when applying the more lenient sliding scale standard, do not support granting a stay of the HOD. DCI will likely prevail on one theory. But that theory implicates an improper compensatory *award*—it does not call into question the Hearing Officer's ultimate determination that O.C.L. was denied FAPE. Such flimsy reeds are insufficient to support a stay, given the potential for irreparable harm to O.C.L. if his necessary compensatory education awards are delayed.

### IV.   CONCLUSION

Based on the foregoing, DCI's Motion for a Stay, ECF No. 13, will be **DENIED**. A separate Order consistent with this memorandum will follow.

Date:   *3/24/22*

*Royce C. Lamberth*
Royce C. Lamberth
United States District Judge